UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: } | | |
| WILLIAM N. ROZELL } | CASE NO. 06-81483-JAC-13 | |
| SSN:  XXX-XX-4965 } | | |
| PAULA ROZELL } | | |
| SSN:  XXX-XX-8293, } | CHAPTER 13 | |
| Debtor(s). } | | |
| | | |
| WILLIAM ROZELL } | A.P. No. 06-80123-JAC-13 | |
| PAULA ROZELL, } | | |
| Plaintiff(s), } | | |
| v. } | | |
| } | | |
| CITIFINANCIAL AUTO CORPORATION } | | |
| Defendant(s). } | | |

**MEMORANDUM OPINION**

This case is before the Court on CitiFinancial Auto Corporation's motion to stay the above referenced adversary proceeding and to compel arbitration. Debtors oppose the motion and assert that this Court must retain the proceeding as part of its "core" jurisdiction. Alternatively, debtors argue their claims under the Truth in Lending Act are not subject to arbitration because the agreement contains an exclusion for amounts in controversy not exceeding $15,000.00. For the reasons indicated below, CitiFinancial's motion to compel arbitration is granted.

**Findings of Fact**

On September 4, 2003, debtors executed a Retail Installment Contract and Security Agreement for the purchase of a 1998 Dodge Ram pickup truck. On the same date, the debtors executed a separate document titled "Arbitration Agreement" pursuant to which the debtors agreed

to arbitrate all claims arising out of the Retail Installment Contract including "any claim or dispute based on a federal or state statute."

The arbitration agreement provides that certain matters will not be arbitrated. Specifically, the agreement excludes matters in which "all parties . . . . seek monetary relief in the aggregate amount of $15,000 or less in total relief . . . . or any claims and dispute brought in a small claims court."

On August 2, 2006, debtors filed for relief under Chapter 13 of the United States Bankruptcy Code. On August 17, 2006, CitiFinancial filed a secured proof of claim in the amount of $10,215.03 based on the Retail Installment Contract and Security Agreement. On August 30, 2006, the debtors filed a motion to determine value and objection to CitiFinancial's claim. The debtors sought to reduce CitiFinancial's secured claim to $8,163.00 to be paid at the plan rate of interest based solely on the value of the 1998 Dodge truck as asserted by debtors. CitiFinancial did not file a written response to the motion to determine value and objection. On October 4, 2006, the Court entered an order granting debtors' motion to value and sustained the objection as to the interest rate.

On October 2, 2006, debtors filed a complaint against CitiFinancial for damages pursuant to the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 et seq., to recover damages, statutory damages, and costs including attorney fees. Specifically, debtors contend that voluntary GAP insurance was not listed in and/or grouped together with other disclosures concerning voluntary insurance products and that CitiFinancial unlawfully included charges in the amount financed of $255 for GAP insurance premiums. Debtors further allege that CitiFinancial failed to accurately disclose the annual percentage rate as defined in 15 U.S.C. § 1606 and Regulation Z § 226.14, as required by 15 U.S.C. § 1638, and Regulation Z § 226.18 by understating the APR by more than the

2

one-eighth of one percent allowable tolerance. Debtors demand judgment for "compensatory and statutory damages pursuant to 15 U.S.C. § 1640(a) of twice the actual finance charge, capped at $1,000, for compensatory damages of $255.00 plus interest at the contract rate in the amount of $141.00, plus costs and attorneys fees." Debtors' attorneys fees are currently $14,000 or less. Debtors offer to arbitrate any fees exceeding said amount.

On November 1, 2006, CitiFinancial filed a motion to compel arbitration and supporting memorandum of law. CitiFinancial asserts that the adversary proceeding is not a core proceeding under 28 U.S.C. § 157 and arbitration should be compelled. On November 16, 2006, the debtors responded by filing an objection to motion to compel arbitration. The Court held a hearing on the matter on November 20, 2006 at which time both parties presented oral arguments.

**Conclusions of Law**

In *Buckeye Check Cashing, Inc. v. Cardegna*, 26 S.Ct. 1204 (2006), the Supreme Court restated the long standing national policy favoring arbitration. Writing for the Court, Justice Scalia stated:

> To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:
>
> "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[1]

---

[1] *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1207-08 (2006).

3

Under this national policy favoring arbitration, courts are required to "rigorously enforce agreements to arbitrate."[2]

In determining whether statutory claims may be arbitrated, the Supreme Court has directed courts to ask first "whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."[3] In the present case, it is undisputed that the parties agreed to arbitrate all claims relating to their contract, including "any claim or dispute based on a federal or state statute." Debtors argue that the current adversary proceeding is excluded by the express terms of the agreement from arbitration because the agreement provides that any matter in which the parties seek monetary relief in the aggregate amount of $15,000.00 or less is excluded from arbitration. Debtors seek to avoid arbitration under this exclusion by agreeing to arbitrate any fees exceeding $15,000.00. The debtors cannot circumvent the $15,000.00 exclusion by agreeing to arbitrate any amount in excess of the cap for purposes of the exclusion. Absent debtors' bankruptcy filing, this action would be arbitrable according to the terms of the arbitration agreement.

Having determined that the debtors agreed to submit their TILA claims to arbitration and that the claims would be subject to arbitration absent the debtors' bankruptcy filing, the Court must now answer the second question posed by the Supreme Court: Has Congress evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue? Standing alone, the FAA mandates enforcement of agreements to arbitrate statutory claims.[4] In *Shearson/American Express,*

---

[2] *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987).

[3] *Green Tree Fin. Corp. - Alabama v. Randolph*, 531 U.S. 79, 90 (2000).

[4] *McMahon* at 226.

4

*Inc. v. McMahon*, 482 U.S. 220 (1987), the Supreme Court explained that the FAA's mandate, like any statutory directive, may be overridden by a conflicting federal statute or policy.[5] The burden, however, is upon the party opposing arbitration to demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."[6] Under the three-pronged test promulgated in *McMahon*, congressional intent can be established in one of three ways: (1) by turning to the text of the statute in question i.e. the Bankruptcy Code; (2) by reviewing the statute's legislative history; or (3) by finding an inherent conflict between arbitration and the statute's underlying purposes.[7]

Courts applying the *McMahon* analysis in the bankruptcy context have found little guidance either in the text of the Bankruptcy Code or its legislative history to discern congressional intent to create an exception to the FAA in the Bankruptcy Code.[8] The inquiry has been framed instead under the third-prong of *McMahon* as whether there is an inherent conflict between the FAA, which mandates the enforcement of arbitration agreements, and the Bankruptcy Code, which centralizes disputes into a single forum.[9]

The inherent or irreconcilable-conflict analysis has traditionally revolved around whether an action constitutes a core or non-core proceeding with some courts refusing to compel arbitration

---

[5] *Id.*

[6] *Id.* at 227.

[7] *Id.*; *See also Mintze v. American Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222 (3rd Cir. 2006).

[8] *Mintze v. American Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3rd Cir. 2006)(finding no evidence of such intent in either the statutory text or the legislative history of the Bankruptcy Code); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 (3rd Cir. 1989).

[9] *Brown v. Mortgage Elec. Registration Sys., Inc. (In re Brown)*, 2006 WL 3373333 *3 (D.R.I. 2006).

of core proceedings, but generally finding that non-core proceedings are subject to arbitration.[10] Bankruptcy courts may hear proceedings that are core and those that are non-core, but bankruptcy courts cannot enter a final order or judgment with respect to non-core proceedings.[11] 28 U.S.C. 157(b)(2) provides a non-exclusive list of proceedings that are considered core. Debtors argue under § 157(b)(2)(C) that their TILA claims are core counterclaims to the proof of claim filed by CitiFinancial. CitiFinancial counters that the TILA claims are non-core proceedings. The Eleventh Circuit has explained the difference between core and non-core proceedings as follows:

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke substantive rights created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.[12]

Courts that have considered whether TILA claims are core or non-core proceedings are split. Some courts have held as the debtors argue that TILA claims qualify as counterclaims to a proof of claim.[13] Other courts have concluded that adversary proceedings alleging TILA violations constitute non-core proceedings because TILA actions do not invoke substantive rights created by the

---

[10] *Grant v. Cole (In re Grant)*, 281 B.R. 721, 724 (Bankr. S.D. Ala. 2000); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 (3rd Cir. 1989)(finding that arbitration clause was not enforceable as to trustee's § 544(b) claims; however, arbitration of non-core claims was mandatory).

[11] 28 U.S.C. § 157(c)(1).

[12] *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999)(*quoting Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987)).

[13] *McDonald v. Cash N Advance, Inc. (In re Lucas)*, 312 B.R. 407 (Bankr. D. Nev. 2004); *Larocque, II v. CitiFinancial Mortg. Company-TX (In re Larocque, II)*, 283 B.R. 640 (Bankr. D.R.I. 2002); *Pate v. Melvin Williams Manfactured (In re Pate)*, 198 B.R. 841 (Bankr. S.D. Ga. 1996)(*citing Ferris v. Chrysler Credit Corp. (In re Ferris)*, 764 F.2d 1475 (11th Cir. 1985)(finding debtor's complaint under Georgia Motor Vehicle Sales Finance Act was in nature of a counterclaim against claim filed by creditor)).

6

Bankruptcy Code and can exist outside of bankruptcy. In *Porter v. NationsCredit Consumer Discount Co. (In re Porter)*, 295 B.R. 529 (Bankr. E.D. P.A. 2003), the bankruptcy court found that TILA claims do not "arise in" or "arise under" a particular bankruptcy case. The phrase "arising under" describes a proceeding that "invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code," while the phrase "arising in" describes administrative matters that are "unique to the management of the bankruptcy case." [14] *Porter* explained that TILA claims do not represent a cause of action created by the Bankruptcy Code, TILA claims exist independently of bankruptcy, and such claims are frequently raised in actions outside bankruptcy. Accordingly, the court concluded that TILA claims do not give rise to core proceedings.[15] In *Hicks v. Homeq Serv. Corp. (In re Hicks)*, 285 B.R. 317 (Bankr. W.D. Okla. 2002), the bankruptcy court ruled that the debtor's TILA claims were not core proceedings because the claims did not depend on the bankruptcy laws for their existence and could proceed in another court absent the bankruptcy filing.[16] Another court explained that although one count of a complaint in which a Chapter 7 trustee sought to determine the extent and validity of a lien was a core proceeding, the Court had significant doubt that the same could be said for the remaining counts of the trustee's complaint arising from the trustee's effort to enforce TILA violations.[17] The court stated, that "[w]hile these matters may

---

[14] *Toledo* at 1349.

[15] *Porter v. NationsCredit Consumer Discount Co. (In re Porter)*, 295 B.R. 529, 539-40 (Bankr. E.D. Pa. 2003).

[16] *See also Jones v. AAMES Funding Corp. (In re Jones)*, 2004 WL 2203724 at *2 (E.D.Pa. 2004)(finding TILA claims do not arise from a substantive right provided by the federal bankruptcy law); and *Lewis v. Option One Mortgage, Inc.*, 2004 WL 2191600 (Bankr. D. Kan. 2004)(explaining that TILA claims are independent actions that can proceed in another court).

[17] *Derienzo v. Sears, Roebuck and Co. (In re Derienzo)*, 254 B.R. 334 (Bankr. M.D. Pa. 2000).

7

enrich the bankruptcy estate, and thus, be related matters, they neither arise in nor arise out of the bankruptcy."[18]

The Court agrees with the cases finding that TILA claims are non-core proceedings. TILA actions do not depend on the bankruptcy laws for their existence and can proceed in another court absent the bankruptcy filing. Although the motion to value and objection to claim filed by debtors in the present case constituted core proceedings under § 157(b)(2)(C) as being in the nature of a counterclaim filed by the estate against a claim filed against the estate, the Court finds that debtors' complaint for damages under TILA does not invoke a substantive right created by the Bankruptcy Code and is one that could exist outside bankruptcy. Although the action is related to the bankruptcy proceeding as being a matter which could conceivably have an effect on the estate, the action is not a core proceeding. It is an "otherwise related" or non-core proceeding and is accordingly subject to arbitration.

Assuming, arguendo, that debtors' TILA claims constitute a "core" matter, the Court finds that debtors did not satisfy their burden under *McMahon* of demonstrating that Congress intended to preclude arbitration of the TILA claims under the circumstances presented by this case. Enforcing the arbitration agreement under the circumstances of this case will not frustrate the debtors' ability to formulate a plan of reorganization. To sustain their burden, debtors rely in part on the case of *Phillips v. Congelton, L.L.C. (In re White Moutain Co., L.L.C.)*, 403 F.3d 164 (4th Cir. 2005) in which the bankruptcy court refused to compel international arbitration of a core adversary proceeding. In *White Mountain*, the principal of a corporate Chapter 11 debtor filed an adversary proceeding against the debtor seeking a determination that pre-petition cash advances from the

---

[18] *Id.* at 338.
8

principal to the corporation were loans due and owing from the corporation to the principal. The Fourth Circuit affirmed the bankruptcy court's order denying arbitration finding that the debtor satisfied *McMahon's* inherent conflict prong, thereby conferring discretion upon the bankruptcy court to determine whether to compel arbitration. The Fourth Circuit determined that ordering international arbitration to be conducted in England would substantially interfere with the corporation's reorganization efforts. The circumstances presented in this case are very different. Unlike the facts presented in *White Mountain*, the Court finds that compelling arbitration of the debtors' TILA claims, whether or not same are considered core proceedings, will not interfere with the debtors' reorganization efforts.

In *Mintze v. American Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3rd Cir. 2006), the Third Circuit explained that "finding that a proceeding is a core proceeding does not automatically give a bankruptcy court the discretion to deny arbitration." Under *McMahon,* the inherent conflict standard must still be satisfied before a bankruptcy court has discretion to deny arbitration. The court explained that "[w]here an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent, under the *McMahon* standard, to preclude waiver of judicial remedies for the statutory rights at issue."[19] The Third Circuit could not find an inherent conflict between arbitration of the debtor's consumer protection issues and the underlying purposes of the Bankruptcy Code where there were no bankruptcy issues to be decided by the Bankruptcy Court. The debtor's claims were based on TILA and other consumer protection laws, not the Bankruptcy Code. The debtor raised no statutory claims that were created by the Bankruptcy

---

[19] *Mintze v. American Gen. Fin. Servs., (In re Mintze)*, 4343 F.3d 222, 231 (3rd Cir. 2006).

9

Code. With no bankruptcy issue to be decided by the Bankruptcy Court, the Third Circuit concluded that it could not find an inherent conflict between arbitration of the debtor's consumer protection issues and the underlying purposes of the Bankruptcy Code.

Other courts have compelled arbitration of core proceedings as well. In *MBNA America Bank v. Hill*, 436 F.3d 104 (2nd Cir. 2006), the Second Circuit enforced an arbitration agreement in a claim arising under § 362(h). The court explained that even as to core proceedings "the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code."[20] To make this determination the court must inquire into the "nature of the claim and the facts of the specific bankruptcy."[21] Under the circumstances of the case, the Second Circuit concluded that arbitration of the debtor's § 362(h) claim would not seriously jeopardize the objectives of the Bankruptcy Code because the debtor's estate was fully administered and resolution of the claim would have no effect on the debtor's bankruptcy estate.

Other courts have refused to compel arbitration of core proceedings where the amount involved is nominal or the debt will not be administered under the plan. In *McDonald v. Cash N Advance, Inc. (In re Lucas),* 312 B.R. 407 (Bankr. D. Nev. 2004), a Chapter 13 trustee filed a complaint against a payday lender alleging TILA violations. The debtor obtained a loan from the creditor for $140.00 in a transaction covered by TILA. The creditor filed a proof of claim for $165.00. The trustee asked the court to sustain its objection to the proof of claim, allowing creditor

---

[20] *MBNA America Bank v. Hill (In re Hill)*, 436 F.3d 104,108 (2nd Cir. 2006).

[21] *Id.*

10

no distribution from the bankruptcy estate. Although the bankruptcy court determined that the trustee's claims qualified as counterclaims to the proof of claim, the court found no conflict between the FAA and Bankruptcy Code under the circumstances of the case. The court compelled arbitration in light of the nominal amount involved. In *Pate v. Melvin Williams Manufactured (In re Pate)*, 198 B.R. 841 (Bankr. S.D. Ga. 1996), the bankruptcy court granted creditor's motion to compel arbitration of debtor's adversary proceeding for alleged TILA violations arising from debtor's purchase and financing of a mobile home. The court found that debtor's claims were core proceedings, but cautioned that general assertions that "allowing arbitration would affect the overall administration of the estate by causing inefficient delay, duplicative proceedings, or the collateral effect of such arbitration on estate administration are insufficient to override the general federal policy favoring arbitration."[22]

    In the present case, the debtors' Chapter 13 plan has not been confirmed. On September 28, 2006, debtors filed an amended Chapter 13 plan in which debtors' propose to pay the secured portion of CitiFinancial's claim, $8,163.00, through the trustee with a fixed monthly payment in the amount of $181.68 with interest at the plan rate of 9%. Unsecured claims will be paid on a pro rata basis. The plan further provides that "[a]ny non exempt proceeds from potential lawsuit shall be paid to the Chapter 13 Trustee for distribution to creditors." On Schedule C, property claimed as exempt, debtors listed a potential lawsuit against CitiFinancial and listed the value of debtors' claimed exemption in the lawsuit at $0.00. Accordingly, any recovery against CitiFinancial will be paid to the Chapter 13 trustee for distribution to creditors. Debtors specifically pled the amount of damages to be $1,255.00 and counsel for debtor's stipulated that the statutory damages are

---

[22] *Pate v. Melvin Williams Manufactured Homes, Inc. (In re Pate)*, 198 B.R. 841, 846 (Bankr. S.D. Gal. 1996).

$1000.00, plus attorneys fees. Although resolution of the TILA action will potentially have some effect on the ultimate distribution to creditors, the Court finds that the impact will be minimal and that same is not sufficient to override the FAA's mandate and the national policy favoring enforcement of arbitration agreements. Under these circumstances, the Court finds no inherent conflict between the FAA and the Bankruptcy Code. Enforcement of the arbitration agreement will not jeopardize the objectives of the Bankruptcy Code in this bankruptcy.

A separate order granting CitiFinancial's motion to compel arbitration will be entered consistent with this opinion.

Dated: December 7, 2006

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc:    Debtor(s)
       A. Wilson Webb, attorney for plaintiff(s)
       Janine L. Smith, attorney for defendant(s)
       trustee